Good morning. Our first case on the call of the DACA today is Agenda Number 13 for January, Thursday, January 24, 2013, Case Number 1142112, Gruszeczka v. Illinois Workers' Compensation Comm'n. Counsel for the appellant, please proceed. May it please the Court, Counsel. Good morning, Your Honors. My name is Tommy Strau and I'm here today representing the appellant who is the employee in this Workers' Compensation Appeal, Mark Gruszeczka. The issue, as Your Honors know, is whether the mailbox rule applies to Section 19F1 of the Language of the Statute itself. Section 19F1 of the Workers' Compensation Act says that when we're proceeding on a petition for review from the Commission to the Circuit Court, that that petition for review should be commenced within 20 days of any office that has proceeded in these cases upon receipt of that decision. We look at the plain language and the statute itself does not define what the word commence means. Nowhere in the statute, 19F1, does it say the mailbox rule applies. But also, it does not say that the documents must literally be in the hands of the Circuit Clerk by the 20th day. Given that this statutory language is ambiguous, and as we know from this Court's decision in 1999, the Jones decision, which I cited to in terms of strict compliance and a prior interpretation of a different section of 19F1, when we have a statutory interpretation question that involves a right to appeal, we should So we know that we should construe the statute liberally. We also know that in 1977, in the Alton case, this Court decided that the mailbox rule applied to Section 5A of the Illinois Workers' Compensation Act. This Court looked to Section 1.25 of the Statute on Statutes in terms of mailing documents to state So this Court should not be able to say, just because Section 19F1 doesn't mention the mailbox rule, it cannot apply. Because, again, in Alton, the mailbox rule is not explicitly stated in Section 5A either. We also know that the appellate court, the Workers' Compensation Division that handles these cases, in trials to the commission level, that the mailbox rule should apply to that level. And we also know that when in any kind of a case, when you leave the circuit court to appeal a case to the appellate court, starting in Harrisburg and then codified in Supreme Court Rule 373, that the mailbox rule applies when you file an appeal out of the circuit court to the appellate court. So if we look at the nature of a workers' compensation case and its natural progression to the court system, this is what we have. We start with an arbitration level case, a hearing in front of an arbitrator. If either side doesn't like that decision, then we can file an appeal with the Workers' Compensation Commission. And according to the appellate court's case in Norris, which was relying in part on this Court's decision in Alton, we know the can appeal the case to the circuit court. At this point, the appellate court has said, and that's why we're here, that the mailbox rule does not apply to that appeal. But then there's another, the third appeal of right that we have, and that's from the circuit court to the appellate court. And again, because of Supreme Court Rule 373, we know that the mailbox rule applies to that 30-day time period. So we have three appeals of right in any workers' compensation case. And because of Supreme Court Rule 373, and because of the Norris case, as a practical matter for practitioners, we now have the ability to use the mailbox rule for two out of three appeals. But what's so special about the circuit court? Although the review action in the circuit court is technically a new case, right? But your argument is it's more like an appeal? Well, Your Honor, respectfully, I don't think it is a new case. And that is obviously something that counsel tries to really focus hard on in their brief, is to make this seem like it's a new cause of action. But if we think about it, this is not some action in the circuit court that is divorced from everything that came before it. Justice Holdridge, in his dissent at the appellate court, noted Section 2-201 of the Civil Procedure Code says that unless provided by a complaint. Well, the statute that we're interpreting is Section 19F1 of the Workers' Compensation Act. When we're looking at what it means, in the section itself, it's called a petition for review. When we get to the circuit court, what is actually happening? What kind of authority does the circuit court have to look at this case? When the commission hears the case, they have a de novo review. That is not true at the circuit court level. Because what is the circuit court standard of review? It's like any basic administrative process. The circuit court cannot disturb the findings of the Illinois Workers' Compensation Commission unless those findings of fact are against the manifest weight of the evidence. In no way, shape, or form. But your argument doesn't hinge on it not being a new action, right? I mean, it has a new number. That's why I use the word technically. Because their position certainly is it's technically a new action. And I just want to know that if your argument is even if it is a new action, is it more like an appeal to the appellate court? Your Honor, clearly it is. And if we want to call it a new action, that's fine. But it's no different than saying every part of this process is a new action. You just stated that it gets a new case number, and that's something that counsel points out in his case number. The circuit court gave it a new case number. The appellate court gave it a new case number. And the Supreme Court gave it a new case number. Just because something has a new case number does not mean I have had five independent cases here and causes of action. When you think about what a cause of action is at the circuit court, most of the time you're filing a civil lawsuit. And one of the concerns that counsel may bring up to you today is a concern about opening the floodgates. That somehow if this court in the Grusheska decision says that the mailbox rule applies to 19F1, you're going to have practitioners in the civil world come in and try to now do what we already know under the prior case law they can't do, try to file civil complaints by the mail to protect their statute of limitations. Again, if we step back and think about the reality of that, pretend I am filing a plaintiff's auto accident case in the circuit court. And I've just about run up to the statute, and rather than walking across the street to the South County Courthouse, I stick it in the mail, and they don't get it in time. So imagine, rightfully, that the defense counsel brings up a motion to dismiss. I go in front of the circuit court and say, well, your Honor, I thought that I could file this civil lawsuit by the mail, even though all the other cases say I can't, because the Supreme Court said in the Grusheska decision that the mailbox rule applied to Section 19F1 of the Workers Compensation Act for petitions for review. I'd be rightfully immediately thrown out of that court. Again, we are interpreting a specific provision of the workers' compensation statute. Nobody else in any other context is going to be able to cite this decision to say somehow it upends all the other civil case law that has appeared in the past for civil decisions. This is ‑‑ If we agree with your position, would this not affect other administrative review cases that come into the circuit court from a final decision of an administrative agency? Your Honor, it could, depending on what arguments those counsel want to make. But specifically, again, we are only interpreting Section 19F1 of the  Your Honor, this is begun by a request for issuance of a summons. Is that the normal way of review for any other administrative review in the circuit court? Do you know? To be honest, Your Honor, I don't know how it happens with every other administrative review. That's clearly what the legislature has wanted to happen in this case. Would you think there is a difference if that required the filing of a complaint for administrative review as opposed to a request for issuance of a summons as the workers' compact? I think, Your Honor, in that situation, we'd get ‑‑ it's linguistics, but I wouldn't want to get caught up on what a complaint is. Going back to Your Honor's point, I think the focus is more that this really is a notice of appeal. That's what this is. It is a request for issuance of summons because when we're in the administrative system, it doesn't sort of have the teeth of the circuit court or the appellate court. So once we officially get into the circuit court, they mandated we had to have the request for summons to go out and be a certified mailing. But, you know, again, it is ‑‑ it's a unique animal, the Section 19F1. And I don't think it would necessarily matter if you call it a complaint or anything else because it really is, again, it's a review. It's an appeal. The circuit court, again, has no original jurisdiction unless it's an issue of law to review any issue brand new. It is only merely a standard of review. Again, I go from the arbitration level to the commission to the circuit court to the appellate court and then in a rare case like today to Your Honors in front of the Supreme Court. It is merely one step in the administrative process, not divorced from anything that came before it. These are not five independent cases. This is one case that is a practical matter. I don't know that counsel would admit this this morning, but this decision would benefit practitioners on all sides. This is not something that just benefits my client, my office, or people that represent injured workers. If this decision comes down that the mailbox rule applies, it benefits everybody. Because, again, look at what we have. And we're looking here, as this Court said in Jones, to try to again, we practitioners can file the notice of appeal to the commission in a sense, file the petition for review with the commission using the mailbox rule and 30 days. We can file the appeal from the circuit court to the appellate court with the mailbox rule and 30 days. Which makes more sense to this Court? To say that it was the intent of the legislature to have on these two polls, the first and last appeal, the mailbox rule apply. But to carve out this donut hole exception in the middle, the odd person out, that it should not apply at the circuit court appeal. Or that in order, in a common sense manner, to simply say that you treat every level the same. The mailbox rule applies at all levels. It's simplistic, it brings harmony to the work compact, and it is consistent with every other decision that has discussed these issues. You are not arguing that the mailbox rule would apply on any other action on the filing of the complaint or anything like that? Again, that is exactly correct, Your Honor. And so does it matter? Or is it important whether we characterize this as a new action or as an appeal? Well, again, Your Honor, it depends what you want to call a new action. The majority in the appellate court said they could not understand how you can say a new action or this action has started or commenced until the documents are filed at the circuit court. But is not the appeal from the circuit court to the appellate court, is that not an action? I mean, it's a new action in the appellate court, but we already know from Supreme Court Rule 373 that the mailbox rule applies to that. So I guess it's a new action, but again, it's a review. As we talked with Your Honor previously about that, it's a review. This is not a new cause of action. And if you think about the history and the purpose of the Workers' Compensation Act to begin with, the reason we have the act was to help avoid to have employers sued in civil court over injuries that happen on the job site or in the workplace. So when I go to the circuit court, I cannot, under normal circumstances, if my client gets injured on the job, depending again on the nature of the injury, I cannot appeal the case to them in civil court. This is not some brand-new action. I go through the administrative review at the arbitration level, the commission level, and if we don't like the commission's decision, we appeal the case to the circuit court. And again, the circuit court only has review. It's called a proceeding for review. The standard of review is a manifest weight standard. This is not, again, you can call it a new review or a new action in the appeal process, but in no way, shape, or form is this an independent, brand-new cause of action that just is pulled out of the ether that has no connection to anything that happened before it. And if this court were to determine that the mailbox rule does not apply, frankly, maybe for the reason that the language of the statute doesn't specifically say it should, then it calls into question this court's decision in 5A either. As the dissents in this case at the appellate court were concerned about, it calls into question the appellate court's decision in Norris. Because if we're going to say the mailbox rule doesn't apply to Section 19F1, how do we know that it really applies, even though 19B is not for this court? How do we know that it even applies to 19B now? How do I know that I can even file things through the mail from proceedings from the first case or the second case, but I know for sure in the third case I can appeal it? Ms. Stroh, does that mean if we affirm the appellate court's judgment, do we overrule Norris? Well, that was the concern, clearly, of the dissents. Justice Stewart and Justice Holdridge, and Justice Stewart more in particular, was concerned that that's, in effect, what would happen. It would leave practitioners who now, for years, have relied upon Norris to file cases that are from the arbitration level to the commission using the mailbox rule. It calls that into question, because in 19B of the Workers' Compensation Act, it doesn't mention anything about the mailbox rule either. So, again, we're reading this into the statute to begin with, and if this court were to say, well, we're not going to read it into 19F1, well, then what right did the appellate court have to read it into 19B? So then we're going to have, again, in a three rights of appeal process, only the third appeal then, the one from Supreme Court Rule 373, from the circuit court's the appellate court, where you can actually use the mailbox rule. So, again, I ask this court, what makes more sense? To have one out of three, or you can use the mailbox rule? To have two out of three, which is kind of how Norris is upheld, if you don't consider it overturned? Two out of three? Or does it make more sense to say three out of three? Again, this decision, if you uphold the appellate's decision, it does call into question Norris. And, frankly, it calls into question Alton. It also calls into question a case that was cited by Justice Stewart, not especially mentioned in our briefs, but Justice Stewart mentioned the Lashley decision, which was actually the appellate court interpreting a separate part of Section 19F1 in deciding if you mail proof that you paid for the record, as long as you provide proof that you mailed to the commission the cost of the record that was sufficient. So you didn't, the commission didn't actually have to have the check in hand. The appellate court used the mailbox rule in 19F1. Now, I know they didn't follow that in this decision, but it calls into question Lashley as well. Because if this court says 19F1 doesn't have the mailbox rule for this petition for review, then, again, we have to ask, how does it make any sense that the mailbox rule applies to providing a proof that you mailed in to pay for the record, because it doesn't mention that in 19F1 either. So, again, upholding the appellate court raises questions on the validity of all this other prior case law. Whereas, if this court overturns the appellate court's decision and finds that the mailbox rule does apply, everything makes sense. Alton makes sense. Norris makes sense. Lashley makes sense. The statute makes sense. And, again, it calls into question the validity of all of this prior case law. And it makes sense to all of us. Mr. Stroh, let me ask you this question. In 19F1, in the second full paragraph where it talks about the first sentence, the 20 days, the very next sentence talks about issuance of a summons, and there's a time frame of not less than 10, and I think it says, or more than 60 days. I just, I mean, I have a follow-up question, but what's your understanding of what they're talking about in that time frame of 10 to 60? Well, that's just when, Your Honor, when the circuit court has to get the summons out to somebody to have the return for the responded employer to get their response back to the circuit court. But, interestingly... But it doesn't refer to what the clerk has to do. Exactly. Or does it? No, it doesn't. That time frame only is when they have to get it out once it's requested in terms of what the time frame is for the employer to get their response back. So, interestingly, even if I go and file my case literally at the courthouse for the appeal on the 20th day, there is nothing in the statute that says that that circuit clerk, if it's 4.30 in the afternoon on a Friday, that they can't wait until the following Monday or two weeks later if they want to to issue the summons. There's nothing that says that's true. So there is no other definite time frame here that has to be referred strictly to us and us getting the documents to the court. And so when you're looking at just what our actions are, why shouldn't we be able to do the same thing that we do in Supreme Court Rule 373, what the appellate court initially said in Norris, is that we can use the mailbox rule. Because I want to point out, we already have 20 days, which is 10 days fewer at the circuit court level. Again, as a practical matter in how we work with these cases. So we have the 30 days mailbox rule for the first appeal, 30 days mailbox rule for the last appeal, 30 days mailbox rule for the last appeal. But are we saying that the legislature meant that we're going to have 20 days, and not only do you just have 20 days, we're going to give you a lot more to do, because you have to get the record paid for, you have to get the request for summons out to the circuit court, and if you're an insurance company, you have to get, track somebody down at the employer who has the authority to execute an appropriate appeal bond, find somebody else who can act as surety, and get all of these things actually done within 20 days and actually in the circuit clerk's office. Why, if we have these two polls where we have this liberal standard of the 30 days, are we going to say the legislature wanted an extremely strict interpretation of the 20? Frankly, respondents and petitioners need the full 20 days to get all the documents together, especially respondents with the appeal bond. This helps them, frankly, more than it probably even helps us, but it helps everybody. Get the full 20 days so we can get all the documents together. Thank you. Good morning, your honors. May it please the court. Mr. Strau. My name is Daniel Egan from Ruston-Makarovsky and Friedman, and I represent the employer alliance contractors in this appeal by the employee Mark Grucheska. Counsel, what about Mr. Strau's point that the construction of this rule would benefit you in future cases? I mean, as he would like it to result. Well, I was going to start out and say I absolutely agree with Mr. Strau that a decision from this court will benefit both sides. The Comp Act is almost 100 years old, and it has taken 100 years for someone to say, hey, wait a minute, the mailbox rule should apply on filings and initiation of a new action in the circuit court. It's taken us 100 years to answer this question. It's been clear for in my mind for almost 25 years of practice, almost exclusively handling worker compensation cases, that I have to have my documents in the hands of the circuit court clerk within 20 days from the date I receive the decision. Not throw it in the mail five days before the 20th day, not federal express it and hope it gets there, but to have some control and have it in the court's system on the 20th day at the latest. Why would the legislature want that kind of strict action when in other instances the 30 days, the mailbox rule applies? Well, there's nothing in the What about that particular aspect? There's nothing in the legislative history that I could appreciate one way or the other. We have 30 days to file our petition for review. We have 30 days to file a notice of appeal, but we only have 20 days to file a lawsuit in the circuit court. I presume, because I could not find anything, that it was the legislature's intent to discourage lawsuits in the circuit court, to make it difficult to file in the circuit court, because the legislature intended for workers' compensation actions to be heard by the industrial commission, now the Illinois Workers' Comp Commission, and to have them resolved fully and finally at the commission level and not to burden the courts with these hearings. I can't answer. That's only my presumption. There's nothing in the legislative history, but that's the only presumption I can make, because there's only 20 days in which to file in the circuit court. And to answer Mr. Justice Thomas' question, this is a new action. Summons do issue. We don't issue summons when a petition for review is filed at the industrial commission level. We don't issue a summons when we file a notice of appeal with the circuit court to go to the appellate court. We are filing a new action in the circuit court, and it is a request for summons to issue. There is a notice of appeal in the circuit court, and we have a specific timeline to get that summons issued. And the return date that Mr. Justice Kilbride asked about is a return date for the defendant. In this case, I'm the defendant. I was the respondent. I was the one who was named as the defendant, if you will, at the commission level. I could have lost this case, and he'd be the defendant. I'm also naming the Illinois Workers' Compensation Commission. I am naming a new party to this action when we file in the circuit court. It is the initiation of a new suit, a lawsuit, if you will. Not every action in the circuit court is a complaint. We have petitions for discovery, respondents in discovery. You can't turn around and name a respondent in discovery a party defendant by throwing a complaint in the mail on the last day. Your honors have made that clear. So we have a brand-new lawsuit at the circuit court level. We have 20 days to accomplish that fact. And really, it is amazing to me that this section has created such litigation over the years. It's clear. Get your materials into the circuit court 20 days after you get the decision from the commission. That's it. Yes, it would benefit us to have a ruling one way or the other. I'll agree with that. If everybody has to get their materials in within 20 days, as it appears that the legislature intended, everyone benefits. In this instance, the materials were mailed, I believe, on May 6th, maybe May 4th, I don't recall specifically. But they weren't received until May 14th. The due date was May 10th. It took 10 days for the documents to go from counsel's office to the circuit court of DeKalb County? I mean, it would have been faster to drive it there. It could have been driven there. And if they had all the materials, they could have had this in their hands, in the court's hands, within 20 days. Mr. Egan, isn't this really an appeal of the commission? In common parlance, it is an appeal. However, it is not technically an appeal. It is a request for summons to issue and a review of the commission's decision. It is an administrative review. And to answer your question, I don't believe this is any different than a regular administrative review. There's a different time frame, I'll grant you that. But you're still issuing a request for administrative review. You're still issuing summons. And you're still having return date on review. It is still a new action in the circuit court. And I don't think that's any different than filing, if you will, a complaint. It is another initiation of a suit in the circuit court. And I can't stress this enough. I believe, and this is only my presumption, but the legislature, when the COMP Act was drafted, wanted it to be difficult to go into the circuit court to review commission decisions. They wanted the commission to be the final arbiter of work-related injuries. And they made it 20 days. If you affirm the appellate court in this case, you do not overrule Norris. Norris dealt with the filing of a petition review from the decision of an arbitrator to the industrial commission level, to the three-panel member level. The rules of practice before our review were that the petition was to be reviewed. It's not to review documents by mail. It's within the rules of practice. So the fact that the petition for review was mailed is consistent with the rules of practice that allow for that, and is consistent with an appellate procedure, which is different than what we have when we sue in the circuit court. So I don't think you're overruling Norris in any fashion. The other case, Alton, would not be overruled either. That dealt with the issuing, sending notification of rejection of the Act. And the statute, on statutes, is pretty clear. If you're, if you provide proof of service that you have mailed something to an administrative agency, that is deemed conclusive of it being received, even if it's never received. But that is not the start of a new lawsuit. The party's defendant, in this case me, if I had lost and filed in the circuit court, him, have some right to the certainty that that 20-day provision provides us. We have some right to know that after 20 days, the commission decision is final. We can't, when we check with the circuit court and there's nothing on file, you know, we're done. In this case, I don't know when I'm going to be released. We have to wait 10 days. Could it take two weeks? Could it end up in a viaduct on the west side of Chicago and we never get it? Or the clerk's office never gets it? And then we have to reissue it? It's certainly possible. You know, fortunately, we don't hear those stories anymore. I'm sorry, Judge? You could say that about any type of case in which the mailbox rule applies. It seems very clear to me. Get your documents in the clerk's hands within 20 days from the date of the decision. It's very simple. Yes, it's frenzied. It can be frenzied. But it's very simple. Get your documents in the clerk's hands. And there are many ways that you can document that materials received are in the clerk's hands in 20 days. You can go yourself and file it. You can file things electronically if the circuit clerk accepts electronic filings. And I think they will more and more. I'm not sure that I think before the end of my practice every circuit court in Illinois will probably accept electronic filings. I have filed every document in the appellate court and in this court via Federal Express with a return receipt. I know when my documents are with the clerk's office and who signed for them. And I can give you a funny story, rather embarrassing story, involving this case. I sent my responsibility to the clerk's office to your honors. Sent it out, Federal Express, was received on the day that it was due by your clerk's office. Your clerk's office called me and said that my margins were off by half an inch. I still, I revised my brief, made it comply with the Supreme Court rules and it was in the clerk's office the next day by 8 a.m. And I know who signed for it. Really, if you have the documents in hand four, five days, whatever it was, isn't it easier to just drive over to the clerk's office, Federal Express it, something, so you can demonstrate that you have positively conferred jurisdiction on the circuit court rather than coming up here to your honors and say, well, I mailed it. I didn't get there in time, but I mailed it. Again, it's taken a hundred years for us to come up here on this issue. I think it's clear. The mailbox rule doesn't apply. It's not mentioned anywhere in 19F. I believe that the appellate court was correct in their decision in this matter and I ask that your honors affirm them. Thank you. Thank you, your honors. I have a few points on rebuttal. When I mailed in my briefs to your honors, I mailed them on the day they were due because the mailbox rule applies to the filing of briefs. Because this court understands that the mailbox rule is a common sense thing to use. Just going back to what this court said in Harrisburg about what the purpose of the mailbox rule is. It's the modern trend. Now, we could have driven to DeKalb or Sycamore quicker, but most attorneys that practice the workers' compensation practice in multi-jurisdictions. So it may not even just be an hour and 15 minutes away. It could be two hours away or two and a half or three hours. Is that what this court wants to say is, again, we can use the mailbox rule for two out of three levels, but for that other level, everybody, the one in the middle, you better make sure you get in the car, drive to whichever county this case is in, and go get it into the hands of the circuit clerk in time, which means you're going to have to have all the documents together well ahead of the 20-day period so you can make sure you can get it into your schedule to get down there and actually get it on file. That doesn't make any sense with the other two appellate levels. And again, as your Honor pointed out, you could say they need some certainty as to when the 20 days ends. You can say that about any situation where the mailbox rule applies. If the arbitration case is not appealed to the commission, it becomes a final decision of the commission. But the mailbox rule applies to that review. So they have to wait a few extra days, or I have to wait a few extra days if they're going to be the ones to possibly appeal it to know if it's a final decision. That's what the mailbox rule is. If there's a circuit court decision and we want to appeal it to the appellate court under Supreme Court Rule 373, again, we can use the mailbox rule. It doesn't become a final decision of the commission until that 30 days runs, or if it was sent out in the mailbox until it's clear that the court never got it. That is the whole purpose of the mailbox rule. Again, for the majority in the appellate court to state that we don't understand how something can start until the clerk receives the documents, in essence is to say they didn't understand the mailbox rule. That is what it is. The mailbox rule is a fiction that was created to say that the document is not filed when it's literally in the hands of the clerk. It is filed the day that it hits the mailbox to take into account that attorneys practice in multiple jurisdictions, that attorneys use mailboxes. That's what this court was talking about in Harrisburg. It just makes sense. And again, why would the legislature and the work compact have decided to make life that much more difficult for us? Counsel says, well, speculates, it's because they wanted these cases to be hard to get to the circuit court. We could say that about the appellate court too. Why are we clogging the appellate court? As your honors know, back in the day, the Supreme Court is the one that took originally all workers' compensation cases. But because we were concerned there was too much of a backlog and burdening this court with all the work comp appeals, created the workers' compensation panel so that they could hear those. We could say the same thing. Why are we burdening the appellate court workers' compensation panel with all these things? Let's make it really hard to get out of the circuit court to the appellate court. But we don't. Because we use Supreme Court Rule 373 to say the mailbox rule applies. Why are we going to say that anybody's rights for appeal? Because this is, again, is an appeal. This is not a new action. Why is this court going to say that anybody's rights to appeal, an injured workers or the employers, should somehow be burdened with this absolute strict requirement that the legislature would have said, we want the commission to be the final arbiter. We don't want them to have this right to get to the circuit court and have their case reviewed and heard. We want to make it really hard for them to do that. Is that what this court wants to say the legislature was trying to do, is to make it hard for everybody to exercise their rights? I don't think so. Again, this does potentially affect Norris. It's not just that Alton in 5A and Norris in 19B dealt with different mechanisms or different parts of the statute where different things were happening. It was the underlying fundamental philosophy of these decisions that the mailbox rule applied. And so it does matter if this court says the mailbox rule does not apply to 19F of the Work Compact, because that informs how we look at every other provision of the Work Compact. Because for this court to say it doesn't apply is to say it's not in the plain language, it doesn't apply. It's not in the plain language of 19B for Norris. It's not in the plain language of 5A for Alton. It does affect those cases. It affects Lashley, the appellate court's decision on 19F1. And providing proof that you paid for the cost of the record. It affects all these cases. There is only one decision that this court can make that, as I said before, brings harmony to everything, makes sense of everything, makes everything simplistic, makes our practice so much easier and counsel even admitted it makes it better for them, that makes our lives predictable, that makes me know that the mailbox rule applies at every single level instead of guessing which ones it does and which it doesn't. And that's for this court to look at and find that the mailbox rule does apply to section 19F1 of the Workers' Compensation Act and remand this case back to the appellate court for a decision on the merits. Thank you. Thank you. Mr. Stroh, Mr. Egan, we thank you for your arguments this morning. Case number 1142112, Grusheska v. Illinois Workers' Compensation Commission is now taken under advisement as agenda number 13. Thank you.